OPINION OF THE COURT
Seymour Rotker, J.
The defendants were arrested on May 21, 1980 and charged with violations of sections 240.20 and 265.01 of the Penal Law. The defendants moved to suppress the physical evidence, to wit, gravity knives, recovered from each of the defendants. A hearing was ordered from which the following findings of fact and conclusions of law are drawn:
FINDINGS OF FACT
New York City Transit Police Officer George Dunn was working plainclothes detail on a northbound GG train in Queens County. The two defendants standing at the end of a *1122 car were talking loudly and using epithets aimed at a third youth standing some feet away. Other passengers removed themselves to other parts of the train while the harangue was continuing for a two- to three-minute period. At the Continental Avenue stop, the officer approached the defendants and directed them off the train in order to issue each defendant universal summonses for disorderly conduct. Before the summonses were issued and while the officer was walking defendants to a less congested area for the purpose of having the defendants identify themselves so that the summonses could be issued, he observed the top part of a buck knife in defendant Hazelwood’s rear pocket. (Such a knife is one that usually is not a per se weapon.) The officer removed the knife from the defendant’s rear pocket and found that it had been altered so that it opened as would a gravity knife. Shortly thereafter the officer alleged to have observed the outline of another knife in the front pocket of defendant Bahne. This was removed and was found to be an 007 gravity knife. Both knives in the open position were about 12 inches long and weighed XA to Vi pounds and were Vi inch wide and 1 Vi inches deep at their widest points. The court, in a demonstration, had the respective knives placed on the defendants’ persons where allegedly found by the officer. For the purposes of this fact-finding process, the court determines that the officer could not have observed the outline of the knife in Bahne’s pocket. He could have observed the top part of the knife in Hazelwood’s pocket. This court does find that the officer saw something in Hazelwood’s pocket but that in any case, the officer did not perceive a per se weapon at the point of the initial observation. The officer had no reason to fear for his safety at any time.
CONCLUSIONS OF LAW
The issue here is clear. Only the facts have been muddled by what this court believes was an endeavor by the arresting officer, with hindsight, to justify his search of the defendants through at least one observation which this court determines could not have occurred, to wit, the outline of a knife in Bahne’s pocket. It would be best if the officers were given better training on recent developments in the law of search and seizure so as to avoid the persistent problem that arises on fact-finding hearings where hindsight probable cause is developed — perhaps even when same is not needed. The type *1123 of exuberance offered in this case is not to be commended. As so often happens in incredible fact patterns, the lack of credibility of the officer turns a "good” case into a questionable one.
Does a police officer who has elected to issue a universal summons (appearance ticket), for an offense other than a traffic infraction, have the right to search a defendant even when he has no immediate fear for his safety or belief that the defendant has a weapon?
We must first make a determination as to whether probable cause to detain the defendants existed in this case. (Dunaway v New York, 442 US 200.) Clearly, the uncontradicted and credible evidence presented permitted the officer to detain the defendants for further action based upon the events that took place in the subway car.
The effect of the detention for the purpose of issuing a universal summons was to create an arrest situation. (United States v Ricard, 563 F2d 45.)[1]
The officer’s intention was to issue a summons to the defendants after they identiñed themselves. Failure of the defendants to produce proof of their identity would certainly have resulted in a formal arrest. In this case, before the identity questions could have been asked, however, the knives were seized. If the seizure is justifiable, it can only be allowed if incidental to a lawful arrest. The Supreme Court of the United States in United States v Robinson (414 US 218) allowed such a seizure to take place. However, stricter standards may be applied by the States and the New York Court of Appeals in People v Erwin (42 NY2d 1064) and People v Troiano (35 NY2d 476) did so in not allowing into evidence material seized. However, that view can be distinguished from the case at bar. Erwin involved a stop for issuance of a citation for a traffic infraction. The case at bar involves disorderly conduct as the underlying arrest charge. The Court of Appeals has indicated that such a charge is not includable under the traffic exception of Erwin. (People v Weintraub, 35 NY2d 351, 353 [applying United States v Robinson, supra].)
Public policy arguments favor the issuance of "universal summonses” (appearance tickets) where appropriate rather *1124 than arresting citizens where minor offenses are involved. (CPL 150.10 et seq.) This is not to vitiate the right of a police officer to make a formal arrest for a minor offense such as disorderly conduct, committed in his presence. It is for the greater flexibility of the criminal justice system and as an accommodation to defendants that universal summonses are issued.[2] Therefore, to hold that a search is not permissible because an arrest did not occur in a case where the defendant was subject to arrest, but the officer gave the defendant a break, is an injustice to the officer.
Certainly, an arrest of the defendants ab initia for disorderly conduct, in the officer’s discretion, would have been a greater intrusion of the defendant’s person than the lesser intrusion of a search incident to the arrest. (United States v Watson, 423 US 411.) Here, the court is being asked to rule that, because the officer’s choice was to issue an appearance ticket in accord with public policy, the right to search suddenly disappears. If that were the case, there would be no incentive for any officer to issue an appearance ticket, because to do so would require him to put his life on the line by holding an individual in custody pending the issuance of the ticket without knowledge regarding possible weapons possession by the defendant. Certainly, a pat-down search for weapons is a lesser intrusion than a formal arrest, and in order to facilitate appearance ticket issuance, same should be permissible.
Therefore, it is the decision of this court that the evidence seized by the officer should not be suppressed as derived from a search incident to the issuance of an appearance ticket in *1125 lieu of the lawful arrest which was initially warranted under the circumstances of this case.

. CPL 140.10 (subd 1, par [a]): "a police officer may arrest a person for: (a) Any offense when he has reasonable cause to believe that such person has committed such offense in his presence”.

. Denzer, Practice Commentary, McKinney’s Cons Laws of NY, Book 11 A, CPL 150.20, pp 560-561:
"The theory of this section is that under former law the virtues and advantages of the appearance ticket were not sufficiently exploited. Subdivision 1 would provide blanket authorization for any police officer to issue and serve such a ticket — instead of making an arrest without a warrant — in any case involving an offense of less than felony grade. This device should prove salutary from the standpoints of the police, the accused and the public in general.
"Expanded utility of the appearance ticket should be of substantial assistance in the current attempts to find a way of reducing to a minimum that portion of our jail population consisting of unconvicted persons awaiting trial or other disposition of criminal charges. While the solution to that problem may lie largely in improved bail procedures, it is manifest that much is to be gained by a system which in many instances would eliminate the necessity of incarceration or bail in the initial stages of a criminal action.”