OPINION OF THE COURT
Harold Enten, J.
The defendant, Walter Grant, is charged with violating subdivision (1) of section 265.01 (criminal possession of a weapon in the fourth degree) and subdivision 6 of section 240.20 (disorderly conduct) of the Penal Law.
He now moves to suppress physical evidence and a statement allegedly obtained in violation of his constitutional rights. The only witness that testified at the combined Huntley-Mapp hearing which I conducted was the arresting officer, Police Officer John Moran (shield No. 16869). I find his testimony credible and worthy of belief.
*19 The following are my findings of fact and conclusions of law:
FINDINGS OF FACT
On February 6, 1984, at approximately 10:30 a.m., Police Officer John Moran was assigned to Roosevelt High School located at Bathgate Avenue and Fordham Road. Police Officer Moran was approached by School Security Guard Rafael Rosello and advised that several teachers had complained to Mr. Rosello that their classes were being disrupted by a male playing a loud radio outside the school. The school windows were closed. Police Officer Moran approached a male (defendant Grant) standing outside exit 10 playing his radio and told him that he would have to turn the radio off and leave the area.[1] The defendant then proceeded northbound on Bathgate Avenue toward Ford-ham Road with the radio still playing. Police Officer Moran observed the defendant stop on the corner of Bathgate Avenue, which is also a bus stop, and congregate with a group of individuals.[2] The police officer observed the defendant for a period of approximately 15 minutes, during which the radio was still being played loudly. He approached the group and directed them to leave the area.
At the suppression hearing held before me, Police Officer Moran testified that after the order, the defendant remained at the location and refused to leave and turn down his radio. When he then inquired as to what the defendant was doing there, defendant responded that he was waiting for a bus. However, Officer Moran testified that during the period he was observing the defendant three to four buses had passed, and while talking with the defendant two other buses passed. Defendant Grant told Officer Moran that he as waiting for a number 34 bus. The officer asked him where he was going on the bus, but the defendant refused to answer him. Officer Moran testified that the radio was still being played loudly and that he asked defendant to turn it down, but that the defendant did not comply. Officer Moran then advised the defendant that he was under arrest.
After placing the defendant under arrest, he was then searched, and a .32 caliber revolver was recovered from his inside pocket. The defendant stated that the gun did not work *20 and he carried it just to protect his radio. The defendant was placed in a radio car, and given his “Miranda warnings”.
CONCLUSIONS OF LAW
The right to congregate free of governmental intrusion has long been protected by our Constitution’s First Amendment. Freedom to assemble is a sacred right which should only be limited under the most extraordinary circumstances. Our constitutional scheme was designed to protect an individual’s liberty to congregate so long as the endeavor is lawful, and does not disrupt the comfort, safety, or welfare of other members of the community. In our schools, we are left with the special responsibility to safeguard the right of individuals to pursue an education without disruption and interference from other members of the community.
In the instant case, our scenario takes place in the area of a public high school where classes were being held. This court must resolve the following issues:
1. Whether defendant’s behavior constituted the offense of disorderly conduct, and was therefore, a sufficient predicate to conduct a full-blown search incident to arrest; and
2. Whether the noncustodial nature of the offense mandated issuance of a summons, and proscribed the search and seizure of the defendant.
The defendant contends that his refusal to disperse did not constitute probable cause for his arrest and the subsequent search of his person. He further contends that section 240.20 of the Penal Law provides limited discretion to a police officer with respect to his power to intervene in public gatherings. Subdivision 6 of section 240.20 of the Penal Law provides as follows:
“A person is guilty of disorderly conduct when, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof
“[h]e congregates with other [individuals] in a public place and refuses to comply with a lawful order of the police to disperse”.
I find that defendant’s playing his radio loudly in the immediate vicinity of the school and refusing to disperse when so ordered, constituted the offense of disorderly conduct.
The Court of Appeals in People v Galpern (259 NY 279), provided a clear application of the statutory predecessor to our present section 240.20 of the Penal Law. The Galpern court recognized that an individual’s refusal to obey an order to move *21 on “can [only] be justified * * * where the circumstances show conclusively that the police officer’s direction was purely arbitrary and * * * not calculated in any way to promote the public order” (pp 284-285). Consequently, the court affirmed a conviction for disorderly conduct based on a defendant’s refusal to move on when ordered by a police officer. It held that “courts cannot weigh opposing considerations as to the wisdom of the police officer’s directions when a police officer is called upon to decide whether the time has come in which some directions are called for” (supra, at p 285).
The defendant also argues that he was alone when Police Officer Moran issued the order to disperse. The record clearly establishes that the defendant was congregating with others at the time of Officer Moran’s order to disperse, and that he refused to leave after the order was given.
The court now turns to defendant’s argument that loud radio playing could not have served as sufficient probable cause for arrest and search. He also contends that a noncustodial alternative to arrest was available to the officer, i.e., issuance of a summons. Consequently, the search incident to arrest for this offense was allegedly unlawful.
It is clear from the facts adduced at the hearing that Police Officer Moran had probable cause to arrest the defendant. Probable cause is premised on a finding that “the facts and circumstances known to the arresting officer warrant a prudent man in believing that an offense has been committed” (People v Oden, 36 NY2d 382, 384).
The facts and circumstances, as illustrated by defendant’s annoying behavior in the vicinity of the school, congregating with others, and his refusal to disperse when ordered, gave Officer Moran reasonable cause to arrest the defendant for the offense of disorderly conduct.
The defendant argues that the noncriminal nature of the offense will not serve as sufficient grounds for a full-blown arrest and search. He argues that our Court of Appeals has expressed a preference for the use of a noncustodial alternative (summons), where statutorily available in lieu of arrest. Hence, when the initial offense compels issuance of a summons, a full-blown search would not be upheld and any contraband seized would be suppressed. In a rather elegant memorandum of law prepared by defense counsel, he cites the holdings in a trilogy of cases decided by our Court of Appeals — People v Marsh (20 NY2d 98), People v Troiano (35 NY2d 476), and People v Howell (49 NY2d 778). The court finds that the facts in this case are *22 distinguishable, and therefore finds that the defendant’s analogy to the Marsh-Troiano-Howell cases is inapplicable.
The Marsh-Troiano-Howell cases apply to situations where a police officer arrests an individual for a traffic infraction and utilizes the opportunity to conduct a full-blown search of the person. The Court of Appeals in People v Marsh (supra), expressed its concern with searches made incident to an arrest on minor traffic infractions. The Marsh opinion states, “the Legislature never intended to authorize a search of a traffic offender unless, when the vehicle is stopped, there are reasonable grounds * * * for believing that the offender is guilty of a crime rather than merely a simple traffic infraction” (People v Marsh, supra, at p 101). It found that the “fruits” recovered pursuant to a search incident to arrest, based on an arrest warrant for speeding, required suppression because the search and seizure were contrary to both legislative intent and constitutional limits. The Court of Appeals, thereupon, reversed the lower court judgment of conviction, and granted the motion to suppress the evidence seized.
In People v Howell (supra), the court similarly reaffirmed its position- that a traffic violation itself should not serve as a pretext for a full-blown search. Following its opinion in People v Troiano (supra, p 478), where it found that in the “area of traffic violation ‘arrest’ ” a full-blown search may not be justified. The court limited its conclusion to situations where an alternative summons was available, or the arrest was a subject pretext.
The Court of Appeals decisions in the Marsh-Troiano-Howell cases are based on two principles of legislative intent with respect to traffic violations: the first of these principles is that our Legislature never intended that traffic infractions be treated as crimes and that the appropriate law enforcement tool for them is the issuance of a summons in lieu of arrest; the second of these principles is that searches of a traffic offender are only authorized when there is probable cause to believe that the offender is guilty of a crime rather than a simple traffic offense. (People v Marsh, supra, p 98; People v Troiano, supra.)
However, in this case, the arrest was statutorily authorized under CPL 140.10 (subd 1, par [a]) which authorizes a police officer to make an arrest when he or she has reasonable cause to believe that such person has committed the offense in his or her presence. The court finds that the Criminal Procedure Law allows law enforcement officials the discretion to either issue a summons or in the alternative, to arrest for nonfelony offenses. I therefore find that the police officer herein did not exceed his *23 statutory authority when he chose to exercise such discretion and arrested the defendant for the offense of disorderly conduct which was committed in his presence, rather than issue a summons. (CPL 140.10, subd 1, par [a]; 150.20.)
The question of whether a search incident to arrest is appropriate when a noncustodial alternative is available was discussed in a decision by Queens Criminal Court Judge Seymour Rotker in the case of People v Hazelwood (104 Misc 2d 1121). The Hazelwood decision involved a situation in which a police officer elects to issue a universal summons for an offense other than a traffic infraction, and searches the defendant’s person.
In Hazelwood (supra), the court found that “[t]he effect of the detention for the purpose of issuing a universal summons was to create an arrest situation.” (People v Hazelwood, supra, p 1122, citing United States v Ricard, 563 F2d 45.)
It concluded that an officer’s decision to issue an appearance ticket to a defendant did not limit his authority to conduct a pat-down frisk for weapons. “[T]o hold that a search is not permissible because an arrest did not occur in a case where the defendant was subject to an arrest, but the officer gave the defendant a break, is an injustice to the officer.” (People v Hazelwood, supra, at p 1124.)
Notwithstanding the noncustodial alternative available to Police Officer Moran, his right to search the defendant was activated at the point when he arrested defendant Grant. (United States v Robinson, 414 US 218.) Therefore, I find that Police Officer Moran properly conducted his search of the defendant within constitutional guidelines and that the evidence obtained pursuant to that search is admissible.
As to the Huntley branch of defendant’s motion to suppress, the court finds that defendant’s statement to Police Officer Moran was made voluntarily and obtained after the defendant was lawfully under arrest. (People v Rodriguez, 11 NY2d 279.)
Accordingly, defendant’s motion to suppress physical evidence and his statement is denied in its entirety.

. Exit is located on Bathgate Avenue.

. In People v Carcel (3 NY2d 327, 333), the Court of Appeals defined the term “ ‘congregating’ ” as “implies and is usually applicable to [a] coming together * * * of persons or a crowd”; the term “congregates with others” as used in the statute, requires at the very least three persons at a given place and time.