THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v WILBERT HARRIS, Appellant.—Appeal by defendant from a judgment of the Supreme Court, Kings County (Tomei, J.), rendered April 14, 1986, convicting him of attempted criminal possession of a weapon in the third degree, upon his plea of guilty, and imposing sentence. The appeal brings up for review the denial, after a hearing, of that branch of the defendant's omnibus motion which was to suppress physical evidence.

Ordered that the judgment is affirmed, and the case is remitted to the Supreme Court, Kings County, for further proceedings pursuant to CPL 460.50 (5).

On January 1, 1985, at 9:30 A.M., Officer George Mastorides and another officer were patrolling in a radio patrol car and received a radio call based upon an anonymous "911" telephone call that a black male had fired a gun in front of 3303 Foster Avenue in Brooklyn, an apartment building with approximately 24 units. Officer Mastorides, who was less than a mile from the scene and arrived within one minute, observed the defendant, a black male, standing in the doorway of 3303 Foster Avenue with a 12- or 13-year-old boy. No other people

were in the vicinity. As Officer Mastorides approached on foot, the defendant began to walk away from the doorway, and the officer noticed that the defendant was covering a bulge in his right jacket pocket with his right hand, causing him to walk awkwardly. Officer Mastorides inquired as to what the defendant was doing at 3303 Foster Avenue, and the defendant stated, slurring his words, that he did not live there and did not "even want to go in that building". Officer Mastorides simultaneously asked the defendant what was in his pocket and patted it. The defendant responded "a gun". The officer removed a loaded .38 caliber Smith and Wesson revolver. The hearing court denied that branch of the defendant's omnibus motion which was to suppress the gun, finding that the officer had a reasonable suspicion to conduct the pat down search. We affirm. "The size of an area (here, a single address), number of persons expected to be in the area and time elapsed between notification and arrival of police are all relevant to the issue of reasonable suspicion, since they determine the likelihood of the presence of innocent persons whose privacy could be unreasonably invaded (3 La Fave, Search and Seizure, A Treatise on the Fourth Amendment, § 9.3, subd [d])" *(People v Taylor,* 76 AD2d 892, 893).

Officer Mastorides arrived less than one minute after the radio transmission and found the defendant, who matched the general description, at the exact location reported. No one else was in sight other than the young boy. The report that shots had been fired gave the officers some reason to believe that the defendant possessed a gun *(see, People v Russ,* 61 NY2d 693). As Officer Mastorides approached the defendant, he started to walk away from the officer. Officer Mastorides then noticed a suspicious bulge in the defendant's jacket pocket *(see, People v De Bour,* 40 NY2d 210, 213) which the defendant was covering with his hand, as he awkwardly walked away from the officer *(see, People v Benjamin,* 51 NY2d 267). When the police officer asked the defendant what he was doing at the location, he answered evasively *(see, People v Klass,* 55 NY2d 821). Considering the totality of the circumstances, including the radio transmission and the information acquired by observation at the scene, there was reasonable suspicion necessary to justify the limited intrusion which produced the loaded revolver *(see, People v Benjamin, supra).* Lawrence, J. P., Kunzeman, Kooper and Spatt, JJ., concur.