■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v RONALD CARTER, Appellant.—Appeal by the defendant from a judgment of the County Court, Westchester County (Nicolai, J.), rendered October 23, 1987, convicting him of burglary in the second degree and criminal mischief in the fourth degree, after a nonjury trial, and imposing sentence. The appeal brings up for review the denial, after a hearing, of that branch of the defendant's omnibus motion which was to suppress physical evidence.

Ordered that the judgment is reversed, on the law, that branch of the defendant's omnibus motion which was to suppress physical evidence is granted, the indictment is dismissed, and the matter is remitted to the County Court, Westchester County, for the purpose of entering an order in its discretion pursuant to CPL 160.50.

The evidence adduced at the suppression hearing established that on January 26, 1987, at approximately 12:30 P.M., Detective Mark O'Buck of the Peekskill Police Department, responded to a reported burglary in progress at 895 Lockwood Avenue in Peekskill and observed two black males running from that address. As the two ran in different directions, Detective O'Buck ran after and caught the codefendant John Burkett while he radioed a description of the other perpetrator. Although he did not see the other perpetrator's face, Detective O'Buck described him as a black male of medium build, wearing a blue hooded sweatshirt, with the hood up, and gray sweatpants. Meanwhile, another detective, Walter Brovarski, who had accompanied Detective O'Buck to the residence, gave chase to the perpetrator, but was unable to apprehend him.

At approximately 1:00 P.M., Police Officer Doris Watson-Gist, who earlier had heard a description of the perpetrator, was on patrol when she spotted the defendant walking through a parking lot of a commercial area not far from the burglarized

residence. Observing that the defendant was wearing a blue hooded sweatshirt with the hood up, and gray sweatpants, Officer Watson-Gist approached him and asked him some questions. In response to her queries, the defendant stated that his name was Ron and that he was taking a shortcut from the IGA supermarket where he was employed. At the suppression hearing, Officer Watson-Gist explained, however, that she would not expect someone coming from the IGA to pass through that parking lot because the route was not direct. Officer Watson-Gist also observed that the defendant's hood was up. The defendant was not perspiring and did not appear to be out of breath.

After responding to Officer Watson-Gist's questions, the defendant turned and began to walk away, but the officer told him to wait. The defendant then asked her whether he was under arrest and, when she responded that he was not, he hurriedly walked away. Officer Watson-Gist observed that the defendant appeared to be nervous and that, as he walked away, his back was covered with snow. She proceeded to follow him in her patrol car. According to Officer Watson-Gist, the defendant was free to go, but when he suddenly began to run across the street, she became suspicious and began to chase him, first in the car and then on foot. When she was unable to apprehend him, Officer Watson-Gist radioed for backup assistance.

Several officers responded to Officer Watson-Gist's call for assistance, and while canvassing the area, one of them encountered a third individual who was wearing a blue hooded jacket and was running. The pursuit of that individual ended when the officer realized that he was white. Shortly thereafter, the defendant was apprehended hiding near a storm cellar. The officers who observed the perpetrators fleeing the burglarized premises were unable to identify the defendant as the unapprehended perpetrator, although they were acquainted with the defendant by virtue of previous encounters with him. Although the defendant was wearing a gray sweatshirt at the time of his arrest, at the precinct it was discovered that he was wearing a blue hooded sweatshirt underneath the gray sweatshirt.

On appeal, the defendant contends that the hearing court erred in concluding that his flight from Officer Watson-Gist upon learning that he was not under arrest and his evasive actions upon being pursued by Officer Watson-Gist provided the officer with probable cause to justify the arrest. We agree.

That the defendant fit the description, albeit general, of one

of the perpetrators of a burglary which occurred in the area shortly before provided Officer Watson-Gist with the necessary "objective credible reason" to approach him for the purpose of exercising her common-law right of inquiry *(People v Carrasquillo,* 54 NY2d 248; *People v De Bour,* 40 NY2d 210, 223). However, given the defendant's basically innocuous responses to the officer's inquiry, and in the absence of any indication that the defendant was engaged in illegal conduct, the officer was not justified in engaging in any further intrusive activity *(see, People v Carrasquillo, supra,* at 252). Moreover, upon confirming that he was not under arrest, the defendant had a constitutional right to walk or even run from the officer, and his "flight, like refusal to answer, is an insufficient basis for seizure or for the limited detention that is involved in pursuit" *(People v Howard,* 50 NY2d 583, 592). Thus, Officer Watson-Gist was not justified in her pursuit of the defendant, and that which was obtained as a consequence thereof, that is, the conduct of the defendant which exhibited a consciousness of guilt and the statements he made following his arrest, must be suppressed. While the wholly circumstantial evidence adduced at trial was arguably sufficient to support the verdict, without the aforementioned evidence, the proof against the defendant, which consists solely of testimony that he was wearing clothing similar to that which was worn by one of the burglars, that he was in the area at the time of the burglary, and that his initially stated purpose for being in the area may not have been completely truthful, is legally insufficient, and the indictment must be dismissed *(see, e.g., People v Burnett,* 149 AD2d 717, 719). Brown, J. P., Kooper, Eiber and O'Brien, JJ., concur.