■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v RODNEY D. HILL, Appellant.—Judgment reversed on the law, motion granted and indictment dismissed. Memorandum: The arresting officer violated defendant's Fourth Amendment rights by reaching into defendant's pocket and removing a "hide-a-key" case which, when opened, was found to contain cocaine. Although the suppression court adopted the People's "frisk" rationale, concluding that the officer was justified in his belief that the object could have been a weapon, the court's conclusion does not withstand scrutiny. Reaching into a person's pocket to remove a closed container does not constitute a frisk, but rather a full-blown search that requires probable cause *(People v Bernard,* 41 NY2d 759, 763; *People v Peters,* 18 NY2d 238, 245, *affd sub nom. Sibron v New York,* 392 US 40; *People v Joslin,* 32 AD2d 859). Since the officer did not have probable cause to believe that defendant's pocket contained a weapon or evidence of a crime, the discovery of the cocaine is tainted and defendant is entitled to its suppression.

We are unable on this record to credit the officer's testimony that he searched defendant's pocket out of concern for his own safety and that of the other officers and patrons of the bar. Although the officer testified that he was concerned that the object might be a gun or a knife, such belief was unreasonable given the small size of the object the officer had seen. The record establishes that the hide-a-key case was approximately 2-½ inches long and 1-½ inches wide and thus could not reasonably have been mistaken for a dangerous weapon. Moreover, at the time of the search, the police had secured the premises with approximately 11 officers. Defendant was sitting at the bar with a female companion and there was no reason to suspect that he was engaged in, or about to be engaged in, any illegal activity (cf., *Terry v Ohio*, 392 US 1; CPL 140.50). There is no objective basis for believing the officer's testimony that he was concerned for his safety and that of others. Indeed, the officer expressly conceded in his testimony that he had not seen anything dangerous. We thus conclude that the officer's testimony does not furnish any basis upon which to uphold the search of defendant's pocket as a permissible frisk for weapons. We deem it significant that, in addition to searching defendant, police searched several other individuals at the bar, and upon discovery of additional drugs, arrested three or four other patrons. On this record, the conclusion is inescapable that the drugs were seized from defendant as part of a general search that was not authorized by a warrant and that was not supported by any individualized suspicion.

Indeed, the search is similar to that found constitutionally impermissible in *Sibron v New York* (392 US 40, 64-66, *supra*), in which the court stated that:

"Before [a policeman] places a hand on the person of a citizen in search of anything, he must have constitutionally adequate, reasonable grounds for doing so. In the case of the self-protective search for weapons, he must be able to point to particular facts from which he reasonably inferred that the individual was armed and dangerous. *Terry* v. *Ohio, supra.* * * *

"The search for weapons approved in *Terry* consisted solely of a limited patting of the outer clothing of the suspect for concealed objects which might be used as instruments of assault. Only when he discovered such objects did the officer in *Terry* place his hands in the pockets of the men he searched. In this case, with no attempt at an initial limited exploration for arms, Patrolman Martin thrust his hand into

Sibron's pocket and took from him envelopes of heroin. His testimony shows that he was looking for narcotics, and he found them. The search was not reasonably limited in scope to the accomplishment of the only goal which might conceivably have justified its inception—the protection of the officer by disarming a potentially dangerous man. Such a search violates the guarantee of the Fourth Amendment".

All concur, except Callahan, J. P., and Lawton, J., who dissent and vote to affirm, in the following Memorandum.

Callahan, J. P., and Lawton, J. (dissenting). We respectfully dissent. Supreme Court was justified in finding that the police officer's actions were reasonable and did not violate defendant's Fourth Amendment rights. The majority bases its contrary conclusion on a finding that the police officer's action of reaching into defendant's pocket constituted a search which could be justified only on a finding of probable cause, rather than a frisk that requires only reasonable suspicion. The test is not, as perceived by the majority, whether the action constituted a frisk or a search, because a frisk is a search *(see, Terry v Ohio,* 392 US 1, 16-17). Rather, the Supreme Court in *Terry (supra,* at 27) enunciated a different test for permitting a search based on reasonable suspicion: "Our evaluation of the proper balance that has to be struck in this type of case leads us to conclude that there must be a narrowly drawn authority to permit a reasonable search for weapons for the protection of the police officer, where he has reason to believe that he is dealing with an armed and dangerous individual, regardless of whether he has probable cause to arrest the individual for a crime. The officer need not be absolutely certain that the individual is armed; *the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger.* Cf. *Beck* v. *Ohio,* 379 U.S. 89, 91 (1964); *Brinegar* v. *United States,* 338 U.S. 160, 174-176 (1949); *Stacey* v. *Emery,* 97 U.S. 642, 645 (1878)" (emphasis added).

Indeed, the search of a limited area of a defendant's person or property for weapons based on reasonable suspicion, rather than probable cause, is specifically authorized by CPL 140.50 (3) *(see, People v Davis,* 64 NY2d 1143; *People v Prochilo,* 41 NY2d 759, 761-762; *People v Robinson,* 125 AD2d 259).

The question whether a minimally intrusive search of a person's pocket can be based on reasonable suspicion was specifically addressed in *People v Whitehead* (135 AD2d 997, 998-999), which stated: "Generally, a search must 'be confined in scope to an intrusion reasonably designed to discover' a

concealed weapon, an objective best accomplished by a limited external pat down of the suspect *(Terry v Ohio,* 392 US 1, 29; *accord, Sibron v New York,* 392 US 40, 65; *see,* 3 La Fave, Search and Seizure § 9.4 [b], at 517-519 [2d ed]). There are instances, however, where an immediate protective search is compelled by the events developing at an encounter *(see, Adams v Williams,* 407 US 143; 3 La Fave, Search and Seizure § 9.4 [b], at 517-519 [2d ed]). This is precisely such a situation. Defendant failed to provide any identification, denied that there was anything in his right pocket, attempted to conceal the contents of this pocket, began to walk away from the scene and, when seized by [Trooper] Ropke, continually tried to reach into his pocket. Significantly, [Trooper] Aversa had to push defendant's hand away in order to reach the pocket first. It is evident that the potential for being injured was real and immediate. The Troopers were not obligated 'to await the glint of steel' before responding to protect themselves *(People v Benjamin, supra,* at 271). Considering the totality of the circumstances, we concluded that it was reasonable for [Trooper] Aversa to forego a limited pat down in favor of an immediate search of defendant's pocket. Therefore, County Court erred in granting defendant's motion to suppress the physical evidence seized." The majority's reliance on the case of *People v Bernard* (41 NY2d 759) in support of their contentions is misplaced in that, unlike the present case, in *Bernard* there was no testimony regarding the police officer's apprehension for his own safety to support the stop and frisk.

The question is, thus, whether in the present case the officer's limited search for weapons was reasonable. Here, the suppression court credited the officer's testimony and concluded that, under the circumstances presented, his limited search for weapons was reasonable. That determination based on the suppression court's peculiar advantage of having seen and heard the officer must be accorded great weight *(see, People v Prochilo, supra,* at 761) and we see no basis to disturb it. The record discloses that the officer, based on a no knock search warrant, went to the Continental Lounge and Bar with a number of other officers to search the premises for drugs. While the officer was in the bar, he observed defendant cup a black object in his hand and attempt to pass it to a woman. The woman saw the officer watching and refused to take the object from defendant. Defendant then put his hand and the object back into his pocket. The officer observed the end of the object protruding from the defendant's hand. He stated that the object was black, but he could not determine its shape.

From his observation the officer thought the object might be a derringer or a knife. He testified that he was concerned for his safety and the safety of the other officers and people in the bar. The officer grabbed defendant by the wrist and instructed him to remove his hand from his pocket, but not the object. He then attempted to look into defendant's pocket to observe the object, but still could not tell its nature. The officer reached into defendant's pocket and removed a "hide-a-key" case.

We do not believe that it is correct to conclude, as does the majority, that the object could not have been mistaken for a weapon. It is what the officer observed and thought before the search that is determinative. The officer observed a portion of the metal object protruding from defendant's hand and believed it might be a knife or derringer. That, plus the fact that the defendant was seeking surreptitiously to rid himself of the object, and the woman's refusal to accept the same, justified the search.

Given those circumstances, we believe that the suppression court had sufficient facts before it to support its finding that the officer's conduct constituted "a reasonable search for weapons for the protection of the police officer" *(Terry v Ohio,* 392 US 1, 27, *supra; see,* CPL 140.50 [3]; *People v Prochilo,* 41 NY2d 759, *supra; People v Davis,* 64 NY2d 1143, *supra; see also, People v Fernandez,* 58 NY2d 791, 793; *People v Whitehead,* 135 AD2d 997, *supra).* (Appeal from Judgment of Supreme Court, Erie County, Dadd, J.—Attempted Criminal Possession Controlled Substance, 4th Degree.) Present—Callahan, J. P., Denman, Pine, Balio and Lawton, JJ.