■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ROBERT DIAZ, Also Known as ROBERT HOLMES, Respondent.—

Order of the Supreme Court, New York County (Herbert Adlerberg, J.), entered April 24, 1990, granting defendant's motion to suppress physical evidence, is reversed, on the law and the facts, the motion denied and the matter remanded for further proceedings.

Officer John Healey and his partner Officer Gordon were in uniform in a marked radio car as they patrolled the area of Ninth Street and Avenue C, a location where Officer Healey had made previous arrests both for drugs and weapons possession. The officer observed defendant in a large group of people and "people's hands going together". As the police car approached, the crowd started to scatter, the majority going one way and the defendant another. Officer Healey testified that he had observed this scenario on at least two and possibly three passes between 4:30 and 4:55 A.M. At the latter time, the officer saw defendant approach an auto that was stopped in the street. However, as the police car pulled up, the defendant looked at the patrol car, turned around and started to walk away. The auto sped away. Officer Healey called defendant to come over to the police car. Only after this was repeated a second time did defendant turn and approach the radio car. He had his hand in his pocket and the officer, who was seated in the car, directed him to "Take your hand out of your pocket". The defendant removed his hand from his pocket and "was standing there" when the officer told him again to come over to the car. As the defendant got up to the radio car his hand "started to go back into his pocket". Officer Healey grabbed defendant's pocket "for my own and my partner's personal safety for fear of a weapon". Before the officer touched defendant, he had asked him what he was doing and the defendant had responded that he was locked out of his apartment and was waiting for his sister. The officer testified he saw a bulge in defendant's left trouser pocket; that he grabbed that pocket only when defendant began to put his hand back into it despite the officer's repeated admonition for defendant to take his hand out. Although the officer had feared the defendant had a weapon, he did not feel a gun or knife but felt a large number of small, loose vials, later ascertained to be 18 vials of cocaine.

Trial Term found that Officer Healey, the only witness at the suppression hearing, was "a credible witness". It made findings of fact which were essentially the same as the above summary gleaned from the record. However, it concluded that while the officer had a founded suspicion that criminality might be afoot and thus had a common law right of inquiry,

he had no right to touch defendant. Accordingly, it suppressed the physical evidence received from defendant.

We agree.that the officer, based upon his observations at the drug infested area, had a common law right to inquire, a right that "is activated by a founded suspicion that criminal activity is afoot and permits a somewhat greater intrusion in that a policeman is entitled to interfere with a citizen to the extent necessary to gain explanatory information, but short of a forcible seizure". *(People v De Bour,* 40 NY2d 210, 223.) Thus, we have recently noted that a "police officer's observation of what 'seemed to be an exchange' between defendant and an unknown person in an area known for its narcotics activity provided the officer with a sufficient predicate for the minimal intrusion of asking defendant what he was doing in the area *(People v De Bour,* 40 NY2d 210, 220)." *(People v White,* 171 AD2d 607, *lv denied* 78 NY2d 976.)

If the officer had "frisked" or searched defendant at that time without any other indicia of criminal activity, we would agree with the suppression. However, the officer's founded suspicion of criminal activity was escalated during the ensuing course of events. The defendant continued walking when first asked to approach the car. When he came over to the officer, he repeatedly disobeyed the officer's injunction to keep his hand out of his pocket, which the officer testified contained a "bulge". In view of the hour and the fact that the area was the scene of numerous drug and weapon arrests, the defendant's conduct after the initial approach and inquiry gave rise to a reasonable suspicion that he had committed, was committing, or was about to commit a felony or misdemeanor, thus authorizing his forcible stop and detention *(see,* CPL 140.50 [1]; *People v De Bour, supra,* at 223). "A corollary of the statutory right to temporarily detain for questioning is the authority to frisk if the officer reasonably suspects that he is in danger of physical injury by virtue of the detainee being armed (CPL 140.50, subd 3)." *(People v De Bour, supra,* at 223.) Moreover, the officer was justified in conducting a limited patdown or frisk of the defendant in view of his expressed and reasonable fear for his own and his partner's safety *(People v Mack,* 162 AD2d 624, 625). Under the circumstances here, in fact, the "grabbing" of defendant's pocket by the officer was an emergency preclusive action intended to prevent an anticipated use of a weapon. It established the predicate for what followed.

Once the officer felt the vials, which, based upon his experience, he believed to contain "crack", he had probable cause to

arrest defendant for the possession of narcotics. *(People v De Bour, supra,* at 223.) Concur—Wallach, Ross and Asch, JJ.

Carro, J. P., and Rosenberger, J., dissent in a memorandum by Rosenberger, J., as follows: While I agree with the majority that the officer had a common law right to inquire based on his observations of the defendant, and that his reasonable suspicion that he and his partner were in danger of physical injury authorized him to frisk the defendant *(People v De Bour,* 40 NY2d 210), I disagree with the majority's conclusion regarding the propriety of the ensuing search.

The officer testified that after he frisked the defendant's pocket and felt small, hard, loose objects, he was certain that it did not contain a gun or a knife. After the frisk, however, the defendant attempted to run, at which time the officer grabbed him by the shirt and pulled him part way into the patrol car by holding him in a headlock. Although the officer was not sure whether he searched the defendant's pocket and retrieved the crack vials immediately after the frisk or after the defendant attempted to run, the Supreme Court found as fact that the officer reached into the defendant's pocket after the frisk.

Of course, much weight is to be accorded the determination of the hearing court with its peculiar advantage of having seen and heard the witness *(People v Prochilo,* 41 NY2d 759). Once the officer grabbed the defendant's pocket and felt nothing that he believed to be a weapon, his fear for his safety was no longer a factor and the further search of the pocket was improper *(Sibron v New York,* 392 US 40; *People v Roth,* 66 NY2d 688; *People v Brockington,* 176 AD2d 743; *People v Montero,* 149 AD2d 628; *People v Robinson,* 125 AD2d 259, *appeal dismissed* 69 NY2d 1014; *People v McGriff,* 99 AD2d 818).

Assuming, arguendo, that the vials were seized after the defendant attempted to run, the seizure was still improper. Placing the defendant in a headlock and pulling him through the patrol car amounted to an arrest, justified only if based on probable cause *(People v Cantor,* 36 NY2d 106). The defendant's attempted flight, after the frisk failed to reveal a weapon, did not give rise to probable cause. The actual contents of the pocket were as yet unknown and the defendant had a constitutional right to walk away *(People v Howard,* 50 NY2d 583, *cert denied* 449 US 1023; *People v Carter,* 163 AD2d 320, *lv denied* 76 NY2d 938). Since the search preceded the arrest, the Supreme Court properly granted the defendant's motion to suppress *(Sibron v New York, supra).*