■ THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v BONNIE CLARK, Respondent. [625 NYS2d 306] —Mercure, J. Appeal from an order of the County Court of Sullivan County (Kane, J.), entered September 27, 1993, which granted defendant's motion to suppress evidence.

Defendant was the sole passenger in an automobile stopped by State Trooper David Rivera on a remote stretch of State Route 17, a limited access divided highway, avowedly to investigate what appeared to be a bent front license plate. Rivera directed the driver to exit the vehicle and walk around to the rear, where Rivera questioned him concerning a number of matters, including the origin and destination of his trip and his relationship to defendant, and then subjected him to a pat-down frisk. Finding nothing, Rivera then turned his attention to defendant. Because the information she imparted was inconsistent in some respects with that given by the driver and because she appeared nervous, Rivera directed defendant to exit the vehicle. Then, noting that defendant walked "hunched over" with her arms wrapped around her, Rivera directed defendant to stand upright and unzip her jacket and hold it open. He then subjected her to a pat down, whereupon he felt an object in her pants waistband, which he described as hard and the size of a small loaf of bread. Rivera asked defendant what the object was; she responded that she did not know. Rivera then reached in and seized the object, which proved to be a package of cocaine, giving rise to the present charge of criminal possession of a controlled substance in the first degree.

Following a suppression hearing, County Court rejected the challenges directed to Rivera's initial stop of the vehicle, his action in directing both the driver and defendant to exit the vehicle and subjecting them to questioning wholly unrelated to the vehicular offense serving as the professed predicate for the stop and his pat-down frisk of the two of them. County Court concluded, however, that because "it did not resemble or feel like a weapon", Rivera's seizure of the package of cocaine from defendant's waistband was unlawful. The People appeal County Court's ensuing order suppressing the cocaine

seized from defendant's person and further contraband found in her purse following her arrest.

We affirm. Affording appropriate deference to County Court's assessment of Rivera's testimony and the inferences to be reasonably drawn from it *(see, People v Slater,* 173 AD2d 1024, 1025-1026, *lv denied* 78 NY2d 974; *People v Ackerman,* 162 AD2d 793, 795), we discern no basis for upsetting the hearing court's findings that the object Rivera detected in his pat-down frisk of defendant "did not resemble or feel like a weapon", that "[t]here was nothing to suggest that the item was a weapon" and that "nothing within [Rivera's] observations * * * warranted or justified the further intrusion of removing the contraband from [defendant's] person". In fact, the People freely acknowledge that the object did not feel like a weapon. Rather, the question to be decided on this appeal, as expressly posed in the People's brief, "is whether a [police officer] has the right during a protective pat down to investigate further when he discovers an unknown, unidentifiable, and suspiciously placed object, which the subject refuses to identify [and] which the [police officer] can neither identify as a weapon nor as something which is not a weapon". In that connection, it is the People's contention that, fearful for his safety following the disclosure of a hard brick-like object in the waistband of defendant's pants, rather than await the "glint of steel", Rivera was entitled to remove the object to determine if it was a weapon. We disagree.

Fundamentally, "where a visual observation or a limited protective frisk of [a subject] reveals a bulge, that bulge must look or feel like a weapon before the officer is entitled to subject [her] to a further and more intrusive search" *(People v Robinson,* 125 AD2d 259, 261, *appeal dismissed* 69 NY2d 1014; *see, People v Sanchez,* 38 NY2d 72, 75). Here, the People's position would permit the seizure of an object whenever a pat down cannot definitively *exclude* it as a weapon *(see, People v Diaz,* 81 NY2d 106; *People v Sanchez, supra; People v Robinson, supra),* thereby turning the *Terry* analysis *(Terry v Ohio,* 392 US 1) on its head. Nor was the seizure justified by defendant's refusal to identify the loaf-shaped object, which we view as evidence of nothing more than an election to exercise her legitimate right to privacy *(see, People v Diaz, supra,* at 111).

Mikoll, J. P., and Yesawich Jr., J., concur.

Crew III, J. (dissenting). We respectfully dissent. We agree with the majority that the issue for resolution is whether a police officer has the right, during a protective pat down, to

investigate further when he or she discovers a suspiciously unidentifiable object which can neither be identified as a weapon nor excluded as something other than a weapon. It is our view that the answer to that question has been resolved by the United States Supreme Court, as well as the Court of Appeals. It is clear that a protective frisk was permissible in the circumstances of this case as found by both County Court and the majority. It is also clear that such a frisk may not exceed what is necessary to ascertain the presence of weapons *(see, Terry v Ohio,* 392 US 1, 25-26). Our reading of the case law leads us to conclude that it is only after a police officer has concluded that *no weapon is present* that the search is over and there may be no further intrusion *(see, People v Diaz,* 81 NY2d 106, 109).

In the case at bar, after State Trooper David Rivera had the driver, Fred Adams, exit the car and walk to the rear thereof, he observed that Adams appeared extremely nervous and was fidgeting and continuously looking from Rivera to defendant, who was seated in the passenger seat. In response to Rivera's questioning, Adams told him that he had been to New York City for two weeks and was returning to Buffalo. When asked about the identity of his passenger, Adams responded that he did not know defendant, that he had just met her in New York City. Rivera observed that defendant likewise appeared nervous and kept moving toward the steering wheel and back and bending forward toward the center portion of the passenger seat. Rivera left Adams and approached the passenger side of the car, knocking on the window. Defendant, looking over her shoulder, rolled down the window but did not turn toward Rivera. When asked where she had been and where she was going, she replied that she and Adams had driven from Buffalo to New York City a week before and were returning to Buffalo, where they resided in the same neighborhood.

Rivera, obviously suspicious of the conflicting stories, asked defendant to step out of the car and directed her to the rear of the vehicle. As she walked, she was hunched over with her arms wrapped around her abdomen. Rivera then asked defendant if she had any back injuries which would prevent her from standing erect and, when she answered in the negative, he directed her to stand upright. Upon frisking her, he felt the hard object referred to by the majority and asked what it was. Contrary to the majority's assertion that defendant refused to identify the object, she responded that she did not know what it was.

At this point, Rivera had not concluded that defendant did

not possess a weapon; rather, as he clearly stated in his testimony, he did not know whether defendant was possessed of a weapon and given the preposterous response to his inquiry as to the identity of the object, Rivera certainly must have had a much heightened concern for his safety and a reasonable suspicion that the object, whatever it was, might be used against him *(Terry v Ohio,* 392 US 1, 29, *supra* [reflecting that the object in question need not be limited to a gun or a knife but may include "other hidden instruments" which may be used for the assault of the police officer]). Under the peculiar circumstances of this case, we do not believe that Rivera acted unreasonably in ascertaining, by an immediate protective search, that he was not in danger.

White, J., concurs. Ordered that the order is affirmed.