■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v RAFAEL REYES, Appellant. [651 NYS2d 431] —Judgment, Supreme Court, New York County (Michael Corriero, J.), rendered July 1, 1993, convicting defendant, upon his plea of guilty, of criminal possession of a controlled substance in the fifth degree, and sentencing him to a term of 2 to 4 years, affirmed.

Defendant's suppression motion was properly denied. An officer was approached by an anonymous passerby who described defendant and his exact location and stated that defendant possessed a gun. The officer immediately approached defendant, who met the description and behaved nervously. The officer noticed a bulge in defendant's left front coat pocket and, fearing for his safety and the safety of others, tapped the bulge, felt something "hard", and, "believ[ing]" that it was a gun, pulled out a package of drugs. We find this search of defendant's pocket justified since, on the basis of the anonymous tip and the authorized protective pat down, the officer reasonably suspected that the object was a weapon. The case is distinguishable from *People v Robinson* (125 AD2d 259, *appeal dismissed* 69 NY2d 1014), where, unlike here, the bulge was obviously not a weapon, and from *People v Clark* (213 AD2d 946, *affd* 86 NY2d 824), where the police had received no information that the defendant had a weapon. Here, an informant personally reported actually seeing a weapon. Concur—Sullivan, Rubin, Ross and Nardelli, JJ.

Murphy, P. J., dissents in a memorandum as follows: I respectfully dissent.

This case provides yet another variation on a familiar and crucial Fourth Amendment theme: the proper scope of a police officer's protective weapons frisk upon a person suspected of committing a criminal act. According to the suppression hearing testimony of Police Officer Matthew Rosenthal, he was on foot patrol in the East Village of Manhattan on the evening of January 2, 1993, when a passing stranger, who declined to be identified, informed him that a black male, of certain height

and dress, was standing in front of a building half a block away armed with a gun. Defendant Rafael Reyes was standing at the named location and, upon the officer's approach, purportedly changed his behavior "radically"—looking around quickly, rocking back and forth on his feet, patting his front pockets, and moving his hand near his beltline. Officer Rosenthal, noticing a bulge in defendant's left front coat pocket and fearing for his safety, tapped the bulge and felt a small (approximately 3 inches by 4 inches), hard, rectangular object. According to the officer's testimony, "[w]hat [he] felt was just a surface of a hard object", which he was unable to maneuver in defendant's coat pocket so as to "really get around it to feel". Although Rosenthal initially testified that he thought the object was a gun, he subsequently conceded that he didn't know what the object was, but believed it "could have" been a gun because of the informant's information and because he had "seen guns that are of that [small rectangular] nature" in the past. As Rosenthal noted at the suppression hearing: "[T]here was no way that I could be sure that that was a gun or it wasn't. In my mind I believed that it was, and I was left with no other recourse but to pull it out, because if I don't myself or someone else's danger [sic] would have been in jeopardy."

Rosenthal removed the item from defendant's pocket, and discovered it to be a ziplock bag containing twenty vials of crack. The defendant was subsequently arrested and charged with criminal possession of a controlled substance in the fifth degree.

The court denied defendant's motion to suppress the drugs, finding that Officer Rosenthal's actions were motivated by a justifiable fear for his safety. Following his guilty plea, defendant was sentenced, as a predicate felon, to an indeterminate prison term of two to four years.

As a general matter, it is well established that police, in the course of performing a forcible stop justified by a reasonable suspicion that a suspect has committed or is about to commit a crime, may perform a frisk of the suspect's outer clothing in cases where the officer believes that the suspect possesses a weapon and poses a danger to himself or others in the area (*Terry v Ohio*, 392 US 1; *People v De Bour* , 40 NY2d 210, 221; CPL 140.50 [3]). The proper scope of any such frisk is to be judged by the facts of each case (*People v Green*, 35 NY2d 193, 195), measuring the reasonableness of police conduct (*People v Chestnut*, 51 NY2d 14, 23, *cert denied* 449 US 1018) and balancing the liberty and property interests of the individual against the danger perceived by the officer to himself and the immedi-

ate public (*People v Bond*, 116 AD2d 28, *lv denied* 68 NY2d 767). In all such cases, there must be a "substantial, objective, and reasonable basis" for the belief that the suspect is armed (*People v Rivera*, 121 AD2d 939, 941), and the scope of the frisk should be limited to the least intrusive manner consistent with safety concerns (*see, People v Cartagena*, 189 AD2d 67, *lv denied* 81 NY2d 1012). Considerations in this balancing test include the quality of an informant's statement (*People v Francis*, 108 AD2d 322), the suspect's appearance and response to an officer's inquiry (*People v Russ*, 61 NY2d 693), conditions of visibility (*People v Francis, supra*), the sighting of a suspicious bulge, particularly in the area of the suspect's waist (*People v Benjamin*, 51 NY2d 267), the presence or absence of other persons in the vicinity (*People v Cartagena, supra*), and a variety of other factors. While courts have occasionally rejected evidence acquired in protective searches that were not founded upon reasonable suspicion of criminal activity (*see, People v Taveras*, 155 AD2d 131, *appeal dismissed* 76 NY2d 871), they have largely deferred to police assessments of safety concerns in the street in permitting such searches. This deference accords with the understanding that a protective search generally constitutes a minimally intrusive frisk or patdown of the suspect's outer clothing. "A reasonable intrusion generally takes the form of a patdown of the detained person's outer clothing to determine the existence of any weapons. Once that limited intrusion fails to reveal a weapon and the basis for the officer's fear for his safety has therefore abated, the search must stop" (*People v Robinson*, 125 AD2d 259, 261, *appeal dismissed* 69 NY2d 1014). Only when persuasive additional evidence is acquired in the course of the frisk have we held that a further search of a suspect is warranted in the interests of safety. "[W]here a visual observation or a limited protective frisk of [a person] reveals a bulge, that bulge must look or feel like a weapon before the officer is entitled to subject [that person] to a further and more intrusive search" (*supra,* at 261). This reflects an implicit recognition of the constitutional limits of the protective search under *Terry* and *De Bour*: a frisk carried to a point of police intrusion comparable to a full-fledged search incident to arrest cannot be justified simply as an interest in safety, and must instead be based upon a showing that the officer had probable cause to believe that the suspect possessed a weapon. Since danger is common in urban police work, permitting broad and intrusive protective searches without such a showing would effectively nullify Fourth Amendment protections on our city streets. Because Officer Rosenthal's removal of an unidentified object of imprecise shape from

beneath defendant's coat constituted police intrusion far in excess of a surface frisk, the issue in this case is whether the information possessed by Rosenthal gave him probable cause to believe that the defendant had a weapon. For the reasons which follow, I believe it did not.

There can be little doubt that the visual appearance and feel of the object in defendant's possession, without more, would not support the search. By Officer Rosenthal's own testimony, his pat of the bulge in defendant's pocket revealed only a small, hard rectangular object; it did not indicate an object with the shape of a gun. This Court and others have repeatedly rejected efforts to justify a search for a weapon based on comparable perceptions, including, *inter alia*, a brick like object the size of a small loaf of bread (*see, People v Clark*, 213 AD2d 946, 947, *affd on majority opn below* 86 NY2d 824), and a hard object the size of a criminal law book (*People v Setzer*, 199 AD2d 548). Such objects provided no less evidence of a weapon than the 3 inch by 4 inch object at issue here. Indeed, under the majority's holding in this matter, possession of a host of commonplace objects—a pack of cigarettes, an eyeglass case, a computer diskette, and others—would appear to provide sufficient confirmation of an officer's safety concerns to warrant a search. This prospect is constitutionally unacceptable.

Nor did the additional information possessed by Rosenthal, or the totality of the circumstances under which he acted, amount to probable cause warranting a further search of the defendant. A passing observation by an anonymous tipster, which detailed neither the nature of the gun nor its location on defendant's person, and which merely described the general physical appearance of a person standing in plain view less than a block away, is too slender a reed upon which to base such an extensive search (*see, People v Francis, supra*). Moreover, defendant's nervous behavior, though perhaps sufficient (together with the tip) to warrant a frisk, is too subjective an impression to justify further action without a strong basis in physical fact. Indeed, we have consistently required a more specific verification of a weapon as a predicate to a search even where informants' tips or suspicious behavior might authorize a less intrusive examination. In *People v Robinson* (125 AD2d 259, *appeal dismissed* 69 NY2d 1014, *supra),* we held that a police officer's statement that a defendant had a gun, as well as another officer's observation of a bulge on the defendant's person, could justify a stop and frisk. Yet we there forbade the police from conducting a further search unless that frisk revealed the outline of a gun. Likewise, in *People v DeJesus* (169

AD2d 521, *lv denied* 77 NY2d 994), we held that an anonymous tip, together with an undefined bulge at the area of the defendant's groin, could justify a stop and frisk; however, absent the identification of an object that felt like a gun, a further search was impermissible. In *People v Clark* (213 AD2d, *supra,* at 947), the Third Department expressly rejected the People's argument that the *Terry* exception permits officers to satisfy themselves beyond all doubt that an unknown and unidentifiable object in the possession of a nervous suspect is *not* a gun, cogently noting that such a view would "turn[ ] the *Terry* analysis [citation omitted] on its head". In the instant matter, the majority's holding commits the inversion of *Terry* rejected by the Court of Appeals in *Clark,* and stands as precedent for the expansive search of private persons upon the thinnest of police suspicions. Such precedent is regrettable: though pistols may be fashioned and imagined in many shapes and sizes, the Fourth Amendment cannot so readily bend with an officer's subjective appreciation of the gunsmith's ingenuity.

I join the majority in the wish that, consistent with the constraints of the Fourth Amendment, police officers could perform their difficult duties of law enforcement in greater safety. Yet among the costs of a free society is some degree of police uncertainty about the contents of closed containers, imprecise in shape, carried by nervous pedestrians on dark Manhattan streets. In this case, that cost includes the exclusion of the cocaine discovered upon defendant, and dismissal of the indictment against him.