OPINION OF THE COURT
Michael A. Fiechter, J.
*933 After the defendant’s street encounter with a police officer resulting in a charge of criminal possession of a weapon in the fourth degree — metal knuckles, defendant moved to suppress the weapon as having been obtained in violation of his rights under the Fourth Amendment to the United States Constitution and article I, § 12 of the Constitution of the State of New York. After hearing, the court denies the defendant’s motion and holds that, in this case, to prevent the imminent outbreak of violence, the search of the defendant in lieu of lawful arrest does not run afoul of State and Federal constitutional guarantees.
To arrive at this holding requires traveling a long legal road with many, logically speaking, a winding turn. In this legal landscape the root case of People v De Bour (40 NY2d 210 [1976]) has developed dense decisional branches so thick that, in fact, some fear that the light of truth (and logic) cannot penetrate, thereby stifling the growth of justice. “Thus, it is submitted that DeBour has structured the right to inquire in a manner which will continue to pose problems of a constitutional magnitude.” (Kamins, New York Search & Seizure, at 107 [1998 ed].) At least one jurist has recommended that the terrain be uprooted and leveled and sown anew. “The DeBour framework may well be appropriate for courtroom debate and analysis, but it has little to say to the cop on the beat. And because it offers no clear guidance to police, it fails in its chief function of promoting the effective operation of the exclusionary rule.” (Fisher [Sup Ct Justice, NY County], Rethinking Standards for Police Conduct, NYLJ, Oct. 25, 1995, at 1, col 1, at 4, col 4.) “Probably no area of search and seizure law has caused more confusion and frustration than that of street encounters with police where the officer acts on less than probable cause.” (Kamins, op. cit., at 93.) The situation is no less confusing or frustrating when, as here, the officer has probable cause but does .not arrest based on it.
The words of the statutes in question, the Fourth Amendment of the Constitution of the United States and article I, § 12 of the Constitution of the State of New York, are often cited but seldom recited. Yet because they create conceptional monuments of American freedom, they are deserving of deference. “The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.”
*934 Our Court of Appeals has recognized that the State and Federal Constitutions and the privacy guarantees they both embody generally support the policy of uniformity in interpretation of the two statutes. The Court of Appeals has also demonstrated its willingness to adopt more protective standards under the State Constitution when doing so best promotes the predictability and precision in judicial review of search and seizure cases and the protection of the individual rights of our citizens. (People v Torres, 74 NY2d 224 [1989], citing People v P. J. Video, 68 NY2d 296 [1986].) The court’s holding today seeks not to wreck, but rather to reconcile, De Bour (supra) and its progeny while respecting New York’s approach to search and seizure analysis.
The facts provided by the sole witness, Police Officer Masi of the Hempstead Police Department, whose testimony the court finds credible, were barely challenged.
On Monday, September 15, 1997, at approximately 3:47 a.m., while on routine patrol headed southbound on Henry Street in the Village of Hempstead, the officer saw a disturbance in the street and a group of people in close proximity to the defendant and an unapprehended other. The two were engaged in an argument that looked “about to turn physical”. The officer directed the crowd to disperse and it did. He directed the two would-be combatants to go their separate ways and they did not. Both walked northbound on Henry Street, one on the sidewalk and one in the traveled portion of the roadway approximately 15 feet apart. The defendant hid his right hand from the police officer’s sight as he walked, appearing to be hiding an object on the right side of his body in the pocket and waistband area. They traveled for approximately 100 to 150 feet arguing back and forth. The officer turned his car around, drove up to where the defendant was and told both individuals that if they could not separate and go in opposite directions there would be trouble. The defendant and unarrested other at that point turned and walked southbound maintaining their proximity and their argument. Officer Masi, who was alone in this high-crime neighborhood, called for a backup unit. After officers responded, Officer Masi stopped the two individuals. Prior to a pat down the officer asked the defendant if he had any sharp objects that would cut or prick him and the defendant replied in the negative. The officer then conducted the pat down of the defendant who was wearing thick baggy jeans. The officer observed a bulge and felt a hard object in the defendant’s right rear pocket in the vicinity of where the defendant had *935 been making his furtive hand movements. The officer was unable to tell what the hard object was until he reached into the defendant’s right rear pocket and removed a pair of metal knuckles.
After the evidence concluded the defense argued that there was no reason to stop or frisk or arrest the defendant. Nor was there “a founded suspicion criminal activity was afoot”, nor “a reason to believe there was any criminal activity taking place.” The People’s argument was slightly less prolix but, sadly, no less lexical. They argue that the police officer had a reason to stop, had a reason to frisk, had a founded suspicion that criminal activity was afoot, and that the police officer “has a right to be reasonably suspicious of the defendant.” Additionally, the officer had “an independent and reasonable suspicion” that defendant was armed and the contraband was obtained as a result of a “lawful search incident to arrest”. The defense submitted copies of two cases in support of their position. The People submitted none, seeking instead to rely upon the wisdom and scholarship of the court, a strategy of dubious value in any venue.
Any legal scholar, and probably more than a few English teachers, could mount a sizeable argument that both counsels’ amoebic arguments, of counsel themselves, not uncommon in the criminal courts of this State under similar circumstances, are themselves toxic by-products of De Bour (supra) and its progeny. Insofar as inconsistent with the court’s holding, counsels’ arguments are rejected.
“There are no bright lines separating various types of police activity. Determining whether a seizure occurs during the course of a street encounter between the police and a private citizen involves an analysis of the ‘most subtle aspects of our constitutional guarantees’.” (People v Bora, 83 NY2d 531, 535 [1994], citing People v Cantor, 36 NY2d 106, 112.) “Bearing in mind that reasonableness is the touchstone of our inquiry into the propriety of police conduct, we must weigh the degree and scope of the particular intrusion ‘ “ ‘against the precipitating and attending conditions’ ” ’ confronted”. (People v McLaurin, 70 NY2d 779, 781 [1987], citing People v Harrison, 57 NY2d 470, 475, quoting People v De Bour, supra; People v Chestnut, 51 NY2d 14.) Whether the action of the police officer was reasonable (in a citizen’s street encounter) “must necessarily turn on the facts in each individual case.” (People v Green, 35 NY2d 193, 195 [1974].)
Therefore, our Constitutions provide, and our courts routinely order, relief from the tyranny of terminology using reason *936 ableness as the key. “Thus, in measuring the lawfulness of police conduct, we are called upon to strike a balance between the citizen’s inestimable right to personal liberty and security — his ‘right to be let alone’ (Olmstead v United States, 277 US 438, 478, Brandéis, J., dissenting) — and the degree to which the seizure is necessary to advance the public interest in the detection of crime and the apprehension of criminals. [Citations omitted.]” (People v Finlayson, 76 AD2d 670, 676 [2d Dept 1980].) “The reasonableness standard contemplates and permits a flexible set of escalating police responses, provided only that they remain reasonably related in scope and intensity to the information the officer initially has, and to the information he gathers as his encounter with the citizen unfolds * * * [t]he greater the specific and articulable indications of criminal activity, the greater may be the officer’s intrusion upon the citizen’s liberty.” (People v Finlayson, supra, at 675; see also, People v Rosario, 94 AD2d 329 [2d Dept 1983].) “De Bour did not attempt to establish an inflexible legal framework by which to measure police conduct. Encounters between citizens and the police in public places are of an endless variety with no two being precisely alike.” (People v Finlayson, supra, at 676.) De Bour (40 NY2d 210, supra) does not attempt to make such rigid classifications but rather provides “needed and effective guidelines for determining the reasonableness, and therefore the constitutionality, of police action in given circumstances.” (People v Finlayson, at 676.) “[C]ourts must then strike a balance, making an ad hoc determination based upon the immutable and enduring constitutional standard of reasonableness.” (People v Finlayson, supra, at 675, citing Sibron v New York, 392 US 40 [1968].)
In People v McBean (123 AD2d 401, 402 [2d Dept 1986]) the Court stated “ ‘[I]n assessing these confrontations, it is absolutely essential that courts reach determinations based not upon some abstract or illusory notion of what police-citizen encounters ought to be like in an ideal world but upon an objective evaluation of the realities of the encounter as it occurred.’ ” (See, Elkins v United States, 364 US 206, 222; People v Rivera, 14 NY2d 441, 446.)
In determining the reasonableness our law requires that the court inquire whether the reason for the police officer’s conduct was pretextual or false and also inquire whether the officer was motivated by an improper or irrelevant purpose. (People v Prochilo, 41 NY2d 759 [1977].) Further the court must ask whether there was “proof of a describable object or of describ *937 able conduct that provides a reasonable basis for the police officer’s belief’ that the officer’s conduct was necessary. (People v Prochilo, 41 NY2d, supra, at 761; see also, People v Garafolo, 44 AD2d 86 [1974]; People v Manning, 51 AD2d 933 [1st Dept 1976].)
Here it must be noted that at the time the defendant was detained and searched by the officer the officer possessed probable cause to arrest the defendant for violation of Penal Law § 240.20 (1) and (6). Clearly the defendant and the unarrested other were intent on a physical fight in a public place which would have ensued except for the action of the officer. Their conduct created an imminent risk of a breach of the peace, justifying arrest. (People v Hill, 60 Misc 2d 277 [1969]; People v Perry, 265 NY 362 [1934]; People v Montgomery, 17 NYS2d 71 [Chenango County Ct 1940].) Additionally the officer’s order that the pair leave the area in separate directions was a lawful order to disperse, the deliberate disregard of which by both provided probable cause for the arrest of both, pursuant to Penal Law § 240.20 (6). (See, People v Scott, 58 Misc 2d 455.) Individuals’ refusal to obey a police order to disperse can only be justified when the circumstances show conclusively that the police officer’s direction was purely arbitrary and not calculated in any way to promote the public order. (People v Grant, 126 Misc 2d 18 [1984].)
The court finds that the officer’s conduct was not motivated by bias, ill-will or desire to harass. The officer did not exercise an unnecessary show of authority in response to a perceived offense sometimes colloquially called contempt of cop. Nor did the officer act for the purpose of notching another arrest in pursuit of overtime. The officer’s sole motive was to confiscate a weapon or weapons about to be used in a physical fight in breach of the peace. And the officer, patrolling a high-crime area, firmly but professionally conducted a search limited in scope to the facts and circumstances presented.
It must be remembered the primary purpose of the exclusionary rule is the deterrence of unlawful police activity. (Terry v Ohio, 392 US 1 [1968]; People v Drain, 73 NY2d 107 [1989].) Suppressing the metal knuckles here would serve no purpose, as any dedicated police officer in Masi’s situation would behave as he did. Therefore to use any of the guidelines of De Bour (supra) or principles of any of its decisional branches as controlling labels would unjustly make the police officer an offender of the law. “Law never made men a whit more just.” (Thoreau, Civil Disobedience [1849].) As stated a millennium earlier, a righteous man needeth not the law. (1 Timothy 1:9.)
*938 Further, forcibly detaining someone, even subjecting them to a limited search, is a lesser offense than a full arrest. (People v Martinez, 80 NY2d 444 [1992].) Had Officer Masi exercised his probable cause he could have subjected the unapprehended other to 24 to 36 hours of incarceration awaiting arraignment on the charge of disorderly conduct. Officer Masi’s choice to search for weapons rather than arrest acts to increase the liberty of citizens in the community. “[I]t appears appropriate to note that the mushrooming lexicographical distinctions into which the reasonableness of street stops and seizures are being categorized present a disturbing problem. Since the circumstances of no two stops are ever precisely the same, the semantics necessarily employed to effect such compartmentalization, however well intended, in the end make it all the easier to substitute labels for liberties.” (People v Samuels, 50 NY2d 1035, 1039-1040 [1980] [Fuchsberg, J., dissenting].) If constitutional analysis were to require that the police officer identify an appropriate decisional label before acting, then Officer Masi might have sat in his police car carefully gazing at his upper and lower extremities determining whether he had a founded suspicion that criminal activity was afoot — De Bour level 2 — or rather a reasonable suspicion that criminal activity was at hand — De Bour level 3 — until, of course, blood is actually spilled. Our Constitutions have never required that the necessity for body bags arise before police officers can forcefully intrude upon the freedom of our citizenry.
In responding to the arguments raised by counsel, the court notes that the People’s argument that the search here must be sustained as a search incident to lawful arrest pursuant to Chimel v California (395 US 752 [1969]) and People v De Santis (46 NY2d 82 [1978]) must be rejected. Neither the defendant nor his would-be combatant were arrested or charged with disorderly conduct.
After culling defendant’s arguments, the best is that the officer conducted a limited protective frisk which under the applicable case law was unwarranted and violative of the defendant’s constitutional rights. Theoretically supporting the defendant’s position is People v Diaz (81 NY2d 106 [1993]); Matter of Doris A. (163 AD2d 63 [1st Dept 1990]); People v Clark (213 AD2d 946 [3d Dept 1995], affd 86 NY2d 824 [1995]); Matter of Marrhonda G. (81 NY2d 942 [1993]); People v Roth (66 NY2d 688 [1985]); People v Robinson (125 AD2d 259 [1st Dept 1986]); and People v Brockington (176 AD2d 743 [2d Dept 1991]). All these cases limit the protective frisk for the officer’s *939 safety to an intrusion that can proceed only so far as the reasonable belief in danger exists. In the case at bar this principle would dictate that once the officer detected a hard object and could not determine specifically that it was a weapon, the search must stop and the officer must not reach into the defendant’s pocket. The “bulge must look or feel like a weapon before the officer is entitled to subject the detainee to a further * * * search.” (People v Robinson, supra, at 261.) The court finds that in all of the cases cited above the officer acted without probable cause and conducted a search before obtaining any information that a weapon might be present, or even worse, conducted a search after determining that a weapon was not present. In the final analysis of the case at bar, the principle of the limited protective frisk and the case law that describe and support it do not provide a firm enough footing upon which the court must here base a decision of constitutional magnitude.
Similarly, the court does not rely upon the argument that the officer’s conduct was proper because the totality of the circumstances placed the officer in personal danger. (See generally, People v Harris, 132 AD2d 672 [2d Dept 1987]; People v Johnson, 217 AD2d 667 [2d Dept 1995].) A review of these cases provides fact patterns which fall scattershot around those of the case at bar. Using this principle would therefore throw yet another label-bound case upon the rock pile of “totality of the circumstances” law, which, in the vernacular of the sixties, would be part of the problem, not part of the solution. It is submitted, this court’s holding is more prudent defined, as Aristotle would, as the translation of moral ideals into practical policy. (Aristotle, The Ethics of Aristotle: the Nicomachean Ethics [Thompson translation; Penguin Books 1965].)
Further, the court is satisfied that its holding satisfies the requirement of a unity in time between the search and the criminal activity and therefore does not give a police officer, armed with probable cause, the ability to conduct searches at times and places totally at their discretion in violation of the rule of People v Evans (43 NY2d 160 [1977]).
Finally in seeking to reconcile the guidelines established by De Bour (40 NY2d 210, supra) and its decisional progeny it must be noted that against the backdrop of violence or the imminent risk of violence our appellate courts have routinely authorized police conduct similar to Officer Masi’s. (See generally, People v Smith, 182 AD2d 786 [2d Dept 1992]; People v Mitchell, 223 AD2d 729 [1996]; People v Scott, 197 AD2d 550 [2d Dept 1993]; People v Woods, 64 NY2d 736 [1984]; People v *940 Whitehead, 135 AD2d 997 [3d Dept 1987]; People v Holmes, 81 NY2d 1056 [1993]; Matter of David B., 172 AD2d 828 [2d Dept 1991]; People v Hampton, 197 AD2d 365 [1st Dept 1993].)